Zidek *v.* West Penn Power Company, Appellant.

104

Argued April 24, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*William A. Challener,* with him *William A. Challener, Jr.,* for appellant.

*Harry J. Benjamin,* for appellee.

OPINION BY KENWORTHEY, J., June 30, 1941:
In this negligence case, defendant, appeals from a

refusal to grant its motion for judgment n. o. v. Its contention is that prior to the institution of suit, it had made a settlement of this claim with an attorney representing plaintiff.

The facts are undisputed. The accident happened January 21, 1937, and thereafter plaintiff executed and delivered to an attorney an irrevocable power in which she authorized him to "either settle, adjust, enter suit, pursue said suit in the proper courts or otherwise dispose of her claim . . . . . . Said attorney to receive as compensation fifty (50%) per centum of all funds recovered over five hundred ($500) dollars, and in consideration thereof the said attorney agrees to pursue the settlement or the action at law in the case with due diligence to a conclusion."

On November 18, 1937, the attorney notified defendant in writing that "Mrs. Zidek has given me an irrevocable power of attorney to act in her behalf"; and thereafter settlement negotiations began, which terminated in April, 1938, with an agreement between the attorney and defendant, under the terms of which the attorney was to accept $500. The attorney then produced a release, which appeared to have been executed by plaintiff and acknowledged before a Notary Public. The defendant delivered to him its draft for $500 payable to the order of the attorney and plaintiff jointly. In due course, the draft was presented and paid.

The release was forged, the plaintiff's endorsement on the draft was forged, and after he collected the money, the attorney absconded.

Plaintiff concedes that the attorney had authority, under the power, to fix the terms of the settlement. In our opinion, he also had authority to collect payment. The express authority to settle and enter suit, coupled with the authority to pursue the settlement to a conclusion, which is implied from the attorney's express undertaking to do so, carries with it the authority to collect whether or not suit was brought. *Netter v.*

*Logan,* 111 Pa. Superior Ct. 143, 169 A. 245, relied on by the court below, does not support a contrary conclusion, for, although suit had been instituted, we said: "The power to collect and satisfy the judgment is inherent in the power to bring suit and no other proof is necessary." Nor do we agree with the court below that defendant's insistence on a release and the addition of plaintiff as a payee on the draft amounted to an acknowledgment by it ,that the power alone was not broad enough to give the attorney such authority. In the first place, defendant did not know the terms of the power until after the settlement. And if the attorney had the authority to collect payment, the fact that defendant was without knowledge of the extent of the power and took needless precautions against the possible lack of it will not relieve plaintiff from the binding effect of the agent's act within the scope of the authority actually given. A principal is always liable for the act of an agent if the act is within the scope of his authority. *Culver v. Pocono Spring Water Ice Co.,* 206 Pa. 481, 56 A. 29; *Englerth v. Battersby,* 103 Pa. Superior Ct. 103, 156 A. 896. By his conduct a principal may broaden the scope of the acts by which he will be bound where he makes it appear that the agent has more authority than he actually has. But he cannot lessen the scope of the agent's authority by making it appear that he has less, and clearly the person dealing with the agent cannot narrow or lessen the agent's authority by wrongly guessing that he has less than he actually possesses. *Dobbs v. Zink,* 290 Pa. 243, 248, 138 A. 758; *First National Bank v. Colonial Hotel Co.,* 226 Pa. 292, 75 A. 412; *Relf v. Bank of Mobile,* 20 Pa. 435.

It follows from what we have said that the release was unnecessary and if that be true, the fact that it turned out to be a nullity is of no consequence except that it might have furnished defendant with a basis for refusing to go through with the settlement if known in time.

The plaintiff further contends that even if she were to concede that the attorney had authority to collect payment, he was limited to accepting it in cash and he certainly had no authority to sign her name to the check. But the answer to both these suggestions is the same: The attorney actually received cash. The manner in which he received it is of no consequence in this proceeding. Accepting her position as valid, for the moment, she has authorized her agent to accept cash. Defendant has paid it to him by a draft ultimately converted into cash. This made the embezzlement a matter between the plaintiff and her agent only. See *Lovenovitch v. Knights of Joseph B. & L. Association,* 68 Pa. Superior Ct. 421.

Some point is made of the fact that, under the terms of the power, the attorney is not entitled to share in the proceeds of settlement unless the settlement was for a sum in excess of $500. Although we express no opinion on it, if the defendant were charged with the previous knowledge of the attorney's intention to embezzle and with bad faith in helping him to accomplish his criminal design, and if defendant had knowledge of the express terms of the power, there *might* be some merit to it. But the provisions in the power relevant to the payment of the fee to the attorney in no way limited the authority to settle and receive payment and, as already pointed out, defendant had no knowledge of the terms of the power until after the settlement.

Instead of complying with the mandate of our Rule 55, appellant has printed all of the testimony taken in the court below, a vast majority of which consisted of the testimony of witnesses who described the manner in which the accident happened and evidence of the nature and extent of the plaintiff's injuries. Neither of these questions is involved in this appeal. In view of this, the cost of printing the record will be imposed on appellant.

108

The judgment is reversed and entered for the defendant. The costs, other than the printing of the record, to be paid by plaintiff.