In the Matter of the Arbitration between GENERAL ELECTRIC COMPANY, Petitioner, and UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA, C.I.O., Respondent.

Supreme Court, Special Term, New York County, July 28, 1949.

**144**

*J. Edward Lumbard, Jr., William J. Barron* and *Paul J. Quinn* for petitioner.

*David Scribner* and *Arthur Kinoy* for respondent.

SCHREIBER, J. This is a motion by petitioner, General Electric Company, to stay an arbitration " sought to be commenced " by respondent, United Electrical, Radio & Machine Workers of America, C.I.O.

On March 30, 1949, respondent served upon petitioner a demand that it arbitrate, before arbitrators selected from a list of names furnished by the American Arbitration Association, respondent's claim that petitioner had improperly terminated the services of an employee of petitioner's Schenectady plant and of three employees of its Providence, Rhode Island, plant. The arbitration was demanded pursuant to a provision of the " National Agreement " between the parties, entered into in 1946 and amended in 1947 and 1948, reading as follows:

" In the event no agreement is reached on any matter involving the application or interpretation of any provision of this contract, such matter shall be submitted to arbitration on request of either the Union or the Company. * * *

" It is agreed between the Company and the Union that the arbitration of disputes which are subject to arbitration * * * shall be conducted by and under the rules then obtaining of the American Arbitration Association."

Since the making of the present motion the claim for arbitration of the termination of the services of the employee of the Schenectady plant has been withdrawn.

Respondent contends that this court has no jurisdiction to stay the proposed arbitration because it has requested the American Arbitration Association to hold the arbitration hearings in Providence, Rhode Island. In support of this contention respondent cites *Matter of United Elec., Radio & Mach. Workers of America (General Elec. Co.)* (193 Misc. 146, affd. 275 App. Div. 908). In that case it was held that this court is without jurisdiction to confirm an award flowing from an arbitration hearing held in another State. It is unnecessary, however, to determine whether it follows from the holding in the cited case that our courts may not stay an arbitration which is to be held in a foreign State, for there is nothing in the record before the court to indicate that, unless stayed, the arbitration will proceed outside this State. Section 10 of article III of the rules of the American Arbitration Association provides that if the parties cannot agree on the locality where the arbitration is to be held the association " shall have power to determine the locality ". In the instant case, petitioner has not agreed to have the arbitration proceed in Rhode Island and the association has made no determination as to the place where the arbitration is to be had. Petitioner points out that the issue sought to be arbitrated affects employees at every one of petitioner's 107 plants in 42 States and is thus a national rather than a local issue. As both parties have their principal offices in New York State, petitioner maintains that the arbitration, if one is held, should proceed in this State. Whether the association will fix the locality of the arbitration in Rhode Island or in New York is purely conjectural at this time. The important fact is that it has not fixed the locality and that at present there is no factual basis for treating the proposed arbitration as one which, if not stayed, will be held in Rhode Island. Respondent's unilateral request that the arbitration be had in that State is not enough. Respondent's brief states that " under the rules of the American Arbitration Association and the constant practice of the Union and the Company, the arbitration hearing will, if permitted to proceed, inevitably be held in the area where the grievance originated." Petitioner's reply brief states that " this is not so " and cites as an example the recent case of *Matter of Gen. Elec. Co. (United Elec., Radio & Mach. Workers of America, C. I. O.)* (274 App. Div. 767) where the hearings were held in New York although the griev-

ance originated in New Jersey where an employee was discharged. In the circumstances there is insufficient before the court to require or even permit it to find that the arbitration hearings will inevitably be held, if not stayed, in the Providence area.

For the reasons indicated the objection that this court lacks jurisdiction to stay the contemplated arbitration is overruled.

We turn now to the merits of petitioner's claim that the proposed arbitration should be stayed. Petitioner maintains that the employees whose services were terminated had all reached the age of sixty-five years and that they were retired in accordance with petitioner's policy of compulsorily retiring all employees at sixty-five, both those who joined petitioner's pension plan and those, relatively few in number, who did not do so. (One of the three employees involved in the dispute sought to be arbitrated had joined the pension plan and the other two were ineligible because they were over sixty-five years old at the time the amended pension plan took effect and had been in petitioner's employ less than six years.) Petitioner urges that the "National Agreement" between itself and respondent, containing the arbitration clause, does not purport to cover petitioner's rights under its pension plan and under its retirement-for-age policy. To confirm its claim that the parties did not intend to cover that subject, petitioner points to the fact that negotiations between them looking toward the incorporation in the "National Agreement" of provisions dealing with said subject had proved abortive and all reference to the subject omitted from the agreement. Petitioner recognizes that under the arbitration clause in the "National Agreement" it is for the arbitrators to determine disputes "involving the application or interpretation" of the provisions of the agreement, but it contends that this clause does not permit arbitrators to determine that the agreement covers matters which it clearly and unmistakably does not cover or purport to cover and which the evidence shows it was not intended to cover. In other words, petitioner argues that there is no bona fide dispute as to the meaning or application of the contract.

The law is settled that the mere assertion by a party to an agreement containing an arbitration clause, such as the one here involved, that there is a dispute as to the meaning or application of the contract is not enough to entitle it to arbitration. If the nonapplicability or the meaning of the contract is clear and free from doubt, the demand for arbitration must be denied on the ground that no bona fide issue for arbitration exists. Thus in *Matter of International Assn. of Machinists (Cutler-*

*Hammer, Inc.*) (271 App. Div. 917, affd. 297 N. Y. 519), the court said (p. 918): " While the contract provides for arbitration of disputes as to the ' meaning, performance, nonperformance or application ' of its provisions, the mere assertion by a party of a meaning of a provision which is clearly contrary to the plain meaning of the words cannot make an arbitrable issue. It is for the court to determine whether the contract contains a provision for arbitration of the dispute tendered, and in the exercise of that jurisdiction the court must determine whether there is such a dispute. If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot be said to provide for arbitration." To the same effect are *Matter of Curry, Inc. (Reddeck)* (194 Misc. 527); *Matter of Towns & James (Federal Labor Union)* (183 Misc. 181); *Matter of Hawley,* a decision by this court, N. Y. L. J., July 28, 1942, p. 217, col. 1, and *Matter of Amsterdam Dispatch* v. *Devery* (254 App. Div. 233, affd. 278 N. Y. 688).

A reading of the " National Agreement " reveals that it does not even purport to cover the subject of petitioner's right to retire employees who have reached the age limit fixed in its pension plan and in its general policy applicable to all employees. The only provisions of the contract dealing with the termination of employees' services are those which relate to lay-offs for lack of work and discharges for disciplinary reasons. Respondent attempts to justify its demand for arbitration by arguing that petitioner's action violated various specified paragraphs of the " National Agreement ", but a reading of those paragraphs discloses that they by their terms apply only to lay-offs for " lack of work ". Respondent also claims that petitioner violated article I of the " National Agreement ", but that article merely provides that petitioner agrees to recognize respondent as sole collective bargaining agent. *It is significant that the " National Agreement " contains no provision whatsoever limiting or affecting petitioner's right to terminate the services of employees reaching the age limit fixed for purposes of compulsory retirement by petitioner in its pension plan and by its general policy, applicable to all employees alike.*

The evidence submitted on the present motion establishes clearly that the silence of the " National Agreement " on the subject of compulsory retirement at sixty-five was not inadvertent but deliberate and that the agreement was not intended to include that subject within its scope. Prior to August 28, 1942, petitioner's practice had been to retire employees at seventy.

From August 28, 1942, to October 26, 1945, this policy was suspended because of the manpower shortage resulting from the war. Effective September 1, 1946, petitioner adopted an amended pension plan which reduced the retirement age to sixty-five. Since that time petitioner's policy has been to compel all male employees, whether or not members of the pension plan, to retire at sixty-five. During the summer of 1946 respondent and all petitioner's employees were notified of the new compulsory retirement age of sixty-five. A letter by respondent's international representative, dated August 16, 1946, objects to the new policy. In 1947 and 1948 the " National Agreement " was amended. In the negotiations leading up to the amendments, both in 1947 and in 1948, respondent submitted proposals for changes, including changes as to retirement age. No agreement was, however, reached and no reference to the subject was incorporated in the " National Agreement ". It seems clear that petitioner's rights under its retirement policy were not intended by the parties to be embraced within the scope of the " National Agreement ". (To same effect see *Matter of Amer. Fed. Grain Millers [Allied Mills]*, 196 Misc. 517; *Grocery Warehousemen* v. *Kroger Co.* [Pa. Ct. of Common Pleas, Allegheny Co., April 5, 1949], 12 Labor Relations Reporter 334; *Matter of General Elec. Co. [United Elec. Radio & Mach. Workers of America]*, 275 App. Div. 900.) Respondent attempts to distinguish *Grocery Warehousemen* v. *Kroger Co.* (*supra*) on the ground that there the collective bargaining contract, which was silent as to the employer's pension plan, was signed *after* the employer had adopted its retirement program. But in the case at bar the petitioner *did* have a compulsory retirement policy for age *even before* the 1946 agreement was signed — the age fixed at the time being seventy. Nevertheless, the 1946 agreement did not touch upon the subject — this notwithstanding the fact that respondent had been informed prior to the signing of the agreement on July 23, 1946, that petitioner was working out the details of a plan which contemplated compulsory retirement at age sixty-five. Furthermore, the attempts of respondent in 1947 and 1948 to amend the agreement by inserting provisions dealing with retirement and changes in the pension plan indicate its recognition of the fact that those subjects were not included within the scope of the 1946 agreement and that amendments were necessary to bring them within the purview of the agreement.

The court is of the opinion that no arbitrable dispute exists. The motion to stay arbitration is granted. Settle order.